I think the way they organized the captions, they just put the plaintiff and the objectors on the same side of the V. So I just read what they hand me. But I appreciate the clarification. Good morning. May it please this court, Scott Sims for the appellants. I'm going to attempt to reserve five minutes before rebuttal. There are numerous issues raised in the briefs that we believe require reversal. But for purposes of today, I'd like to focus on four issues. First, I'm going to talk about adequacy under Rule 23A4. Second, I'm going to talk about the appropriate legal standard for purposes of evaluating whether the proposed attorney's fees constitute a disproportionate amount of the settlement for purposes of a Bluetooth collusion analysis, as opposed to the fee award itself. Third, I'm going to talk about the claims made for versionary structure of the settlement. And fourth and related, I'm going to talk about the proposed reverter of any unawarded attorney's fees back to Lufthansa, starting first with adequacy under Rule 23A4. The district court abused its discretion in certifying the settlement class because it did not find there was an adequate class representative at the time the settlement was reached. So at the time the settlement was reached, there was a binding term sheet, quote, unquote, binding term sheet signed at a mediation between Ms. Marie, class counsel, and Lufthansa. At that time, Ms. Marie was the only named plaintiff in the case. The district court recognized that there were problems with Ms. Marie's adequacy. And the district court ended up punting, not deciding whether or not she was adequate. Those problems were a result of the fact that Ms. Marie's case was stayed while there was an appeal to this court of whether or not she was going to be required to arbitrate her claims and couldn't proceed on a classified basis. The district court at that time. And who was the appellant in that appeal? The appellant in that appeal was Lufthansa, Your Honor. So Lufthansa was appealing that. This was prior to the Supreme Court's decision that there was an automatic stay, which came in Coinbase in, I think, 2023. So the district court, in order for there to be a stay pending the appeal, had to find that that appeal presented a substantial question. And what Judge Fitzgerald said is, I denied the motion. I think I'm right. But he recognized that it was really an open question. So the problem that presented for Ms. Marie was her case was stayed. And she's faced a material risk. No guarantee, but a material risk. What happened with that appeal? It seems from the docket it just sort of trailed away. What happened is they settled. This is the problem. So what? It seemed like it was dragged out. I mean, was it wrapped up in the settlement? Yeah. When they settled, they dismissed the appeal or stayed the appeal one way or the other. And so the problem was, as Judge Fitzgerald recognized prior to recusing himself, he noted that the case being stayed and the fact that she was potentially subject to individual arbitration gave her, meaning Ms. Marie, a stronger reason to settle than class members who weren't subject to arbitration. So Ms. Marie had purchased her tickets through Expedia. Expedia's terms and conditions have an arbitration provision. Lufthansa was trying to enforce that as a third party beneficiary. Those are who we call indirect purchasers in the briefs. So last I checked the docket, that case was still pending. And that was, I checked last week maybe. Something's happened. You mean the appeal of, you'll have to ask Lufthansa and class counsel. It went into the abyss essentially when they settled, I guess, as you can inquire with them. But the problem was because Ms. Marie had a stronger incentive to settle, under this court's opinion in Kim v. Allison 2, that stronger incentive to settle was going to render her an inadequate class representative. The district court recognized the problem, but I said, punted. And they punted, and what Judge Wilson said was, well, they added a plaintiff after the settlement was reached. And he found this later added plaintiff, Mr. Gerdaud, was adequate. That was an abuse of discretion. Rule 23A4 is clear, that the class representative has to fairly and adequately protect the interests of the class. If you're not a class representative when the binding settlement is reached, you can't do that. It's impossible. This court in Radcliffe also noted that the unbiased judgment, quote, unbiased judgment, end quote, is critical for a class representative. Well, if you're not a class representative and not a named plaintiff when the settlement is reached, you can't provide that unbiased judgment. So there was this binding term sheet signed. That's in the record, 2 ER 305, paragraph 9. And at the original preliminary approval hearing before Judge Fitzgerald, Judge Fitzgerald pinned down class counsel. And he asked, did Mr. Gerdaud have anything to do with this case in connection with the mediation or prior to it? And the answer was no, because he was added after they reached the binding term sheet. That's in the record at 2 ER 121, line 18, through 2 ER 122, line 4. Then Mr. Gerdaud had nothing to do with this case until after the deal was done. So for that reason, we believe the court needs to reverse the certification of the settlement class on grounds there's no class representative. The Kim 2 problems would also disqualify class counsel. Moving on. With respect to the appropriate legal standard for purposes of evaluating whether or not the proposed attorney's fees would constitute a disproportionate amount of the class recovery. Under Bluetooth, that's one of the subtle signs of collusion that the district court has to look for. That's undisputed. The issue is, what is the legal standard for looking at that? And under this court's opinions and Kim Viala's in one, and in Lowry, the appropriate legal standard is you look at the proposed fees on the one hand and compare them to the actual amount that the class is going to be paid on the other hand. And when I say actual amount, how much is actually going to go into a class member's pocket? Not some common fund that's going to revert back to the defendant if every single class member submits a claim and every single class member then gets paid. It's the actual amount, not a hypothetical common fund. The district court did not apply that legal standard. In looking at whether or not the proposed fees would constitute a disproportionate amount of the class recovery, what the district court looked at is they said class counsel seeking $875,000 in fees. There's a $3.5 million settlement cap that if a whole bunch of class members, essentially everyone, submits a claim, then there's some hypothetical world in which that $3.5 might be claimed. And $875,000 is 25% of $3.5. So that's the Ninth Circuit's 25% benchmark. The problem is the actual amount that the class is going to be paid isn't $3.5 million. It was a claims made settlement. The actual amount the class is going to get paid is only half a million dollars. So what do we make of the fact that the claims at issue seem to change from earlier in the case to the final settlement? Because it seemed to be a case about the actual refunds. And then when you get to the settlement, it seems to be just about interest. Because as I read it, the settlement doesn't even release the actual refund claims themselves. So those are actually not being settled. It's just sort of this accrued interest. Am I reading that right? And how does that affect this analysis? Well, so for purposes of Rule 23A and adequacy in class certification, not at all. For purposes of this second conversation related to collusion and fairness and that aspect of the settlement, it went something like this. When they originally went to mediation, it appeared that the release was going to release everything. Then the Castanares plaintiff stood up and said, whoa, hold on. And the release now does is limited to just interest claims. That is correct. But the statement in the briefs by the respondents that Judge Fitzgerald dismissed the claims for refunds is false. He did not. What Judge Fitzgerald said is, with respect to the named plaintiff, Miss Marie, and the Castanares plaintiffs in the related case, they filed suit. When they filed suit, they had not been paid refunds. Lufthansa then attempted to pick them off, to use the phrase in this court's opinions in Pitts and Chen, that you can't pick off a class representative and moot the class action by paying them after they sue. And Lufthansa did that because it had a policy, which is in the record, which came out in discovery. They had a policy of only paying people who filed suit or complained to the Department of Transportation. So they did that. But although the named plaintiffs, because they were paid after they filed suit, wouldn't eventually be able to get their refund, they could only get their interest, the named plaintiffs could still pursue on behalf of the class, pursuant to their original complaint, the full refunds, which is exactly what the operative complaints do, including the third amended complaint filed by Miss Marie after she settled. It continues to plead a claim for a full refund. So it is true that the interest is the only item released. But there are unrefunded customers who are owed over $30 million in refunds that still haven't been paid. They didn't get a flight. They haven't been paid. And they're entitled to not only their refund, but they're entitled to interest. Lufthansa has been holding onto their money for three plus years now. So even if they get their refund today, they're not going to be made anywhere near whole because of the time value of money, if that answers your question,  So it essentially reduces even further the recovery, because it's just a recovery with respect to interest, and yet the fees are at another level. I guess you could put it that way, Your Honor. Class counsel, I suspect, is going to get up and argue that in evaluating his proposed attorney's fees, that you should consider the quote, unquote, full refunds that could be paid under the settlement, OK? You can't do that under this court's opinion in Briseno, because as is again admitted in Lufthansa's answering brief and as is in the record from the trial court, Lufthansa was always paying refunds to people who asked. Now, belatedly, we allege, but they always were paying refunds to people who asked. And what this court's opinion in Briseno says is, if the defendant is already doing something, then agree to do it in the settlement is not new consideration and cannot be considered value delivered to the class for purposes of calculating attorney's fees. There's, we've also cited, I believe, the Pampers case from the Sixth Circuit. Judge Wardlaw has a question. Yes. So on the issue of the refunds, Judge Wilson in his August 21 order says that class members who have already received their refund may choose either a $10 cash option or a $45 voucher. So these are people who have refunds. And then he says, he goes on to say, class members who have not received their refund can submit a claim for their full ticket price plus 1%. Is he misdescribing the settlement agreement? No, that's accurate, Your Honor. So there were two different paths to submit depending on whether you were a refunded or unrefunded customer. The refunded customers were required to submit a claim or else get nothing. 86% of them will get nothing because it was a claims made requirement. Even though their contact information was known, their credit card information was known, they could have been directly paid. But they had an option to submit a claim for either $10 in cash or a $45 voucher. That's one path. Also, on that, the settlement required every single person to get notice so they could make a claim. They did get notice. That's correct, Your Honor. Which refunds it wasn't required to do absent the settlement. So if you're talking about for purposes of the full refund, we don't dispute that for purposes of looking at attorney's fee to include the administrative cost, which would be the notice cost, that that could be included in looking at the percentage of attorney's fees. If you include the notice cost and the $500,000 going to the class, class counsel is taking 56% of settlement monies. What we believe is that under Briseño, as well as the Sixth Circuit's opinion in Pampers, is since they were already providing refunds to anybody who asked, any full refunds cannot be included for purposes of calculating attorney's fees because it's not new consideration. But Judge Warlaw, back to your question, the second path was these unrefunded customers. And unrefunded customers also had to submit a claim, but they didn't have an option. It was just one path, submit a claim. And if you submitted a claim, then you could get the full refund, like you always could have gotten if you asked Lufthansa, and to this day still can, in addition to 1% of your ticket price. Not 1% interest, but 1% of your ticket price. Do you want to save time for rebuttal? Yes, Your Honor. I would like to. Let me just make one, if I run out of time, or run out of time. But claims made reversionary settlements, they're disfavored. At page 61 of its answering brief, Lufthansa says, again, it was willing to pay $3.5 million here. $2 million is going to revert to Lufthansa. There's no reason for that. The only reason that happened is they knew this was going to happen. They set up a settlement that guaranteed Lufthansa would pay $2 million less than it was willing to pay. Why do I say they knew it? Because they admit in their answering briefs. Page 31 of Marie's brief says the claims rate was exceptionally high. Page 54 of Lufthansa's answering brief, the claims rate was outstanding. So even with an outstanding and exceptionally high claims rate, $2 million is going to go back into the pockets of Lufthansa. The claims were less than half a million dollars. They structured the settlement to guarantee Lufthansa would have to pay a minimal amount, while class counsel would come in and seek fees based upon a fictional $3.5 million number, even though Lufthansa admits it was willing to pay $3.5 million. Thank you. Thank you, counsel. We'll hear now first from Mr. Roberts. OK. You all can hear me OK? Yes. OK. Good morning, Your Honors. Max Roberts, Bursar and Fisher for the plaintiffs Marie and Gerdaud and class counsel. Your Honors will be the third, fourth, and fifth judges to evaluate this settlement, which has gone through two preliminary approval hearings, a motion for reconsideration, a year's worth of confirmatory discovery, and now this appeal. To say the settlement has been under a microscope is an understatement. And in light of that, to say that the district court clearly abused its discretion in approving the settlement is without support. Well, before he recused himself, Judge Fitzgerald was quite concerned about the behavior that occurred in this case. He basically suggested that matters had been misrepresented to him in terms of not disclosing the stay requests were actually in order to conduct unbeknownst to the district court and to others these negotiations. So counting him as one of the judges who has reviewed this, he didn't seem to be too favorable while it was in his hands. Nonetheless, Your Honor, he never issued an order on preliminary approval. And the judge who ultimately did, Judge Wilson, did not find that the settlement bore hallmarks of collusion or that our adequacy is impaired. In particular, he found that it was done with a third-party mediator, neutral, that we were sufficiently informed of the facts. I mean, procedurally, there was some evidence, arguably, of collusion that Judge Fitzgerald was worried about. But if you look at the Bluetooth factors, why aren't there some red flags here that warranted? Well, sure, Your Honor. So the one Bluetooth factor that I think Judge Wilson and objectors counsel focus on is the claims-made structure. And notwithstanding that claims-made settlements are not per se unreasonable, here, Luffans is paying out $3.4 million under the settlement, which is basically the cap that we negotiated. And that goes back to, should we count the full refunds as part of the value of the settlement? Now, Mr. Sims just got up here, and he said Luffans is still holding on to about $30 million worth of refunds. So it is true that these refunds are just not being paid to class members. That's something that we agree on. And as a result of this settlement, there are now 1,000 class members claiming $1.82 million in refunds who are now getting refunded. They were informed of the right to get one. They didn't have to call up the airline and try and procure one, which I'm sure, as Your Honors know, if your flights have ever been canceled, it's not exactly an easy process. They're just getting it with a nice, easy claim form. And they're getting 1 percent of their ticket price, which is the interest, effectively, when we negotiated in Luffans' delay on getting to — on issuing refunds in general. So do we include the refunds in evaluating what the recovery is to the class versus the attorney's fees, or do we not? Yes, Your Honor, because, one, it was what was actually claimed by class members, and, two, because those class members were not refunded prior. You know, in Briseno, there was injunctive relief that was negotiated that was already happening. This wasn't a case where Luffans was — But when you look at the final settlement, it's a settlement of interest claims. Well, Your Honor, it provides a mechanism to get full refunds plus interest. It does release the interest claims only, but it nonetheless provides an avenue. And it's an avenue that we were not allowed to pursue and Castaner's plaintiffs were not allowed to pursue because our clients were found to not have standing. And I understand Mr. Sims' argument that if someone wasn't refunded, they could pursue a full interest claim or a full refund claim on behalf of the class. But that wasn't the case for us, for Ms. Marie or for the Castaner's plaintiffs, because they had already been refunded. I — you know, we argued before the district court that it was a pickoff attempt, but Judge Fitzgerald didn't agree. So those claims were dismissed, and the settlement is now actually providing relief that wasn't available in the litigation and that the 1,002 class members who did not get refunds are now getting. I mean, their Lufanzo was sitting on that money, and now they're going to get it. Can you address the adequacy of the class members? I mean, how can someone who played no role and shows up after everything's over be an adequate class representative? Sure, Your Honor. So it's mistaken to say that Mr. Gurdage showed up after everything was over. He was added after the mediation, but prior to the actual settlement being finalized. And as he attested — There was a binding term sheet before he showed up. There was a binding term sheet on the material terms, but not the settlement. And Mr. Gurdage, independently in his declaration, he reviewed, he evaluated, and he approved the settlement. He wasn't being required to. He wasn't being forced to. He said, I, as a direct purchaser, think that the settlement is fair, reasonable, and adequate. And class and objector's counsel had a year's worth of confirmatory discovery in which they could have deposed Mr. Gurdage. They could have asked him why he did that. They never did. So the only evidence in the record is his declaration. And the district court found that Mr. Gurdage's declaration satisfied the district court that he was an adequate class representative. And that finding of fact is reviewed for clear error. And it's a sort of, I guess, a mixed question of law, but the same standard. So when you have the actual declaration under penalty of perjury on one hand, and attorney speculation on the other, the district court went with the actual evidence. And the actual evidence says Mr. Gurdage reviewed the settlement, and he found it was adequate. And by the way, we also cite cases in our brief. The Yaffe case and the Nunez case where class members were added after the settlement was reached or after the term sheet was reached, and they were found to be adequate. Ms. Marie also was never found to be inadequate. In fact, the district court found that she was on the same legal footing as all other class members because the motion to compel arbitration had been denied. So although she was stayed, she nonetheless had exactly the same claim. And in the actual preliminary approval order, the district court found both plaintiffs to be adequate class representatives. Was that appeal sort of stayed and back-burned during the negotiations? That appeal is still active, as Judge Wardlaw noted. We provide regular status. Thomas. What? Judge Thomas. Excuse me, Judge Thomas. We provide regular status updates to the court every couple of months just informing them that the settlement is going on. And obviously, if the settlement is vacated, then that appeal will be pushed forward. But what I would also note is that if that appeal is being pushed forward, we now have a direct purchaser plaintiff who Lufanza knew was going to be added if the settlement never happened, and that the Marie case wasn't just going to be stayed indefinitely. There was going to be a direct purchaser plaintiff in our case, and that case was going to be proceeding. I briefly want to address the claims process and the structure again. I've noticed that Objectors' Counsel has jettisoned all their arguments about this being a not reasonable recovery. I didn't hear anything from Mr. Sims up here. And claims processes, and I see my time is almost up. May I finish this point, Your Honor? Yes. OK. Claims processes are perfectly common, especially where they're not burdensome. I know this because Objectors' Counsel has done it in their Eden Cemetery case that we cite in the briefing, where also all class members' identities were known, but they had a claims process. And the reason, as we, if you look at the Montoya case that we cite in our briefing, is that it maximizes the opportunity present for class members. In other words, we could have negotiated for a direct payment, but it would have meant Lufonza paying out less. So maybe it would have been you get $1 or a $10 voucher, or you get a quarter of a percent interest. Instead of, for the people that actually care enough to submit an easy claim form, you're getting 1% interest and then $10 and a $45 voucher. So that's not an unreasonable process. The district court found that it was very easy to go through, and we know that it was easy to go through because we had a significantly above-average claims rate on the entire class. OK. All right. Thank you, counsel. We'll hear now from Ms. Gulliver. Ms. Gulliver. May it please the court, Colleen Gulliver on behalf of Deutsche Lufthansa. At the outset, I just want to correct a couple of things that the objector's counsel said. First, they continue to state, despite no evidence in the record, that the release that was negotiated was intending to release open ticket claims. That was never the intent. We've repeatedly stated that in the two courts, and there's been no evidence to the contrary. In addition, objector's counsel also stated that the record showed that the only people that were getting paid were people that sued Lufthansa for their refunds. But then they later admitted that Lufthansa was paying anyone who requested a refund. So what the record shows is that for a very short period of time, 2.6% of the class period, that Lufthansa had to shut off refunds for less than a month. After that point, the record showed that 66% of the class received a refund within 30 days. So what ended up being shown through Castaneris' discovery was that this case, which is only about interest for the majority of the class, was just not worth a lot. The estimates for Lufthansa puts it at $160,000. Marie's counsel says at a minimum it's $340,000, I believe. So this is a case where there isn't a ton at issue, even if you get it. Are there any savings fees here? Well, they haven't been awarded yet. But Marie's counsel is allowed to request up to $875,000, which they did. I also want to remind the court that we are set at a- I mean, given the point you just made about how little was at stake and then the size of the fees, why isn't that a huge red flag? Because what has been shown through the discovery wasn't known at the time of the settlement. Part of what came out as part of that discovery was we had to hire an expert and really value those claims. We also had to dig through and do a sample of all the refunds because it required a manual review. What was shown, that was actually the class was one third of the size less than we believed it to be. So at the time that the parties entered into settlement, we believed the case was worth more than it has turned out to be. And that's knowledge and a bell that just cannot be unrung. That doesn't change the fact that the class here, one of the other things objector's counsel stated was that the class's value is only $500,000. That's incorrect. There's a minimum floor of $500,000. You're also allowed to include notice costs, which are almost $200,000, whatever is awarded in attorney's fees, as well as the district court acknowledged that there was some value and a significant value to those who had not been refunded to the opportunity to get a refund. And 1,000 of those open ticket customers did request a refund through that easy claims process. So there is a value to that as well. Even if you assume that the objector's valuation of the settlement is accurate, which we don't agree, you're still not talking about the kinds of multiples that the Ninth Circuit has overturned a settlement for. The cases that objector's counsel cites, you're talking times seven, times 30. That's not the situation here. At most, if you accept their valuation, you're talking less than a two multiple, which is a significant difference. This case and this settlement has been reviewed multiple times. And the standard of review here is extremely limited. But, you know, here's the things I'd like you, you know, to address sort of in the aggregate. I mean, you have class representatives, one of whom was saddled with a unique issue, the arbitration issue. And then you have someone who is added in after the term sheet is already done with the first person who's saddled with the conflict. And then you have the structure that's gonna create this, you know, very large imbalance between the attorney's fees and the monetary recovery, everything going back to Lufthansa. And then you add on that, what is frankly the disturbing behavior that occurred in front of Judge Fitzgerald, where it frankly looked like misrepresentation to the court so that this could be conducted in the absence of the court and the plaintiffs in the other case knowing. Putting that all together, why is it an abuse of discretion to just rubber stamp this the way it was done? Well, Your Honor, we don't believe it was rubber stamped. It was originally denied. We've also enhanced the settlement. I know, but in the final order, doesn't address the concerns he identified in the first order. Well, a couple of things, Your Honor. First, Judge Fitzgerald, we spoke to Judge Fitzgerald twice on the issue. We explained that it was not what it appeared to be. There had been no misrepresentation of the court, and Judge Fitzgerald recognized that. He took our proffer and he said that he hoped that we could move past it and that this wouldn't be brought up again. It continues to be. Repeatedly, there was never any intent. This settlement was on the books and there's in the record that this mediation, which was happening before a former federal judge, was already scheduled long before this state decision came down. It was set up because they were representing the entirety of the class and could provide finality. There was never an intent to misrepresent anything to the court, and the Ninth Circuit has said that you are permitted to negotiate with not every class plaintiff. We chose to negotiate with a firm that is well-versed in consumer class actions that had been representing other airline plaintiffs, so they had knowledge and understanding of these settlements and what was really at risk here. And Judge Fitzgerald, or excuse me, Judge Wilson acknowledged that there were significant litigation hazards, both at class certification and on the merits here, for what is at most interest. And so while we understand that the point that Judge Wilson and Judge Fitzgerald was looking at was whether this was a reverse auction, whether we had picked a counsel intentionally to get a good deal. And what is shown is that the class, if that were to be the case, the class would have objected. They wouldn't have liked this deal and they would have opposed it, but they've recognized that it is a good deal. It provides them substantial compensation for claims that were small and had a significant risk of never giving them any money at all. So that's it. I'm done. Thank you. Okay. All right. Thank you, counsel. You used your time, but I'll give you one minute in rebuttal. Thank you, Judge. Very quickly, also on the adequacy, one other point to note. Mr. Gerdad also is seeking a $2,000 incentive award. So when he was presented with a settlement that was already done, do you think he could evaluate it adequately? If he would have said no, they would have found somebody else. They wouldn't have added somebody else. He wanted his $2,000 incentive award. That's number one. So what's our standard of review on adequacy of class representatives? Well, Your Honor, we believe that as a matter of law, you have to have an adequate class representative at the time the settlement was reached. So I think that you... They cite two cases, district court cases, I grant you, where a new class representative was approved following the conclusion of settlement negotiations. Sure, and they actually... So we don't have any Nysert case on it, but at least you have two other district courts who reached the same conclusion. Yeah, those district courts, we believe, actually support our position. In the first case, which is the Jaffe case, when the plaintiff was added, the settlement was not, to use the court's words there, was not a fait accompli. Here, the settlement was a fait accompli. There was a binding term sheet that contained all the material terms. So Jaffe actually supports the position that you have to have a class representative at the time that the settlement is reached. With respect to the Nunez case, it's a rather complicated factual pattern, but what actually happened was, when they settled, there was an adequate class representative. Preliminary approval was granted. After preliminary approval, the named plaintiff at the time of the settlement, who had supported the settlement, changed his mind. He said, you know what, now I object. And the district court went through an analysis at final approval, and what it found was that the fact that the named plaintiff who was adequate at the time the settlement was reached now was objecting, was not a problem, but was actually consistent with what a class representative is supposed to do, which is to provide the unbiased judgment that this court talked about in Radcliffe. And so he's, he's. Well, my point being, I don't think there's a per se rule that we have on this. And it seems to be a factual inquiry. Do you disagree? So, well, I disagree that it would not be as a matter of law, but I do appreciate where you're coming from. And I do agree with you that there's not a case. This, this court doesn't have a case, but, but then also, I would also say he didn't do any inquiry of this. Judge Wilson didn't. He just said, dear dad, it was added. He has a declaration. He accepted the affidavit. And so if I still have just the. No, we've allowed you to go over. Thank you. My apologies for eating up your time. That's okay. I appreciate it. Okay. All right. Thank you. Counsel. The case just argued is submitted. And with that, we are concluded our session for today.
judges: THOMAS, WARDLAW, COLLINS